IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Veronica Robinson, individually and on behalf of all participants and beneficiaries of the Wateree Community Actions, Inc. Health and Welfare Plan, and on behalf of Wateree Community Actions, Inc. Health and Welfare Plan, <br><br> Plaintiffs, <br><br> v. <br><br> Trustee Council of Wateree Community Actions, Inc.; Wateree Community Actions, Inc.; Daisy B. Alexander; Willie L. Bethune; George R. Gibson; Rubye J. Johnson; and Wateree Community Actions, Inc. Health and Welfare Plan, <br><br> Defendants. | CA: 3:11-CV-00313-CMC <br><br><br> **OPINION AND ORDER RESOLVING DISPUTED CLAIM AND APPROVING REQUESTS FOR ATTORNEYS' FEES, COSTS, INCENTIVE PAYMENT AND DISBURSEMENT OF CLASS SETTLEMENT FUNDS** |

This matter is before the court (1) for resolution of a disputed claim; (2) on multiple applications for approval of attorneys' fees and costs, administrative costs, and approval of an incentive payment; and (3) for final approval of disbursement of Class Settlement funds. The court previously approved two Settlement Classes, the terms of the settlement, and procedures for claims administration and final distribution of funds. *See* Dkt. No. 91 ("Order Approving Class Settlement"); *see also* Dkt. No. 75 ("Preliminary Order").[1]

The matters addressed in the Order Approving Class Settlement and a related Bar Order were reduced to judgment on June 1, 2012. This left claims administration, resolution of any disputed

---

[1]  This order incorporates a number of defined terms (shown here with initial capitalization) from the Order Approving Class Settlement, Preliminary Order, and incorporated Settlement Agreement.

claims, and approval of fees, costs, and disbursements for post-judgment proceedings.  Dkt. No. 93 (Judgment).  No appeals were taken from the judgment.[2]

**Claims and Appeals.**  Pursuant to the procedures approved in the prior orders, class members were required to submit claims by specified deadlines which have now passed.  Nineteen (19) Participants and eighteen (18) Healthcare Providers (collectively  "Claimants") submitted a total of 319 claims.

The Claims Administrator has reviewed and issued written decisions on those claims.  The Settlement Administrator provided notice of those decisions to all Claimants.  Claimants whose claims were denied in whole or in part were given instructions on how to appeal the denial.  Two appeals were received by the Settlement Administrator who then submitted the appeals, along with the original claim form and the Claims Administrator's determination, to the court.  Dkt. No. 94.[3]  One of these claims was mooted by the Claims Administrator's subsequent approval of the claim.

---

[2]  Additional procedural history is set out in  the Preliminary Order (*supra* n.1) which appointed Named Plaintiff Veronica Robinson as class representative and Pierce, Herns, Sloan & Wilson, LLC, as Class Counsel, approved the Class Settlement notice, cover letters to members of the Settlement Classes, Bar Order notice, and other related documents, and preliminarily approved the Settlement Classes and proposed Class Settlements.  Dkt. No. 75.  The Class Settlement notices were sent out in accordance with the Preliminary Order with some minor approved schedule modifications necessitated by inaccurate addresses for some class members.  Dkt. Nos. 78, 79.
    The only objection received by the court was a blank form.  Dkt. No. 80.  The court held a Final Fairness Hearing on May 30, 2012.  Dkt. No. 89.  At that hearing, the court found that the class notice provided sufficient notice to all members of the proposed Settlement Classes and Barred Persons, that the Phase I and Phase II Settlement Classes met the requirements of Rule 23, and that the Class Settlement should be approved.  Order Approving Class Settlement.  Dkt. No. 91.

[3]  There was one minor deviation from the originally proposed claims administration schedule due to an undeliverable address.  This deviation (remailing of a denial) was approved by the court and afforded the claimant an opportunity to file an appeal.  Dkt. Nos. 96, 97; *see also* Dkt. No. 102-3 ¶ 4 (noting one of the two appeals was from the participant to whom the denial was remailed)

Dkt. No. 102-3 ¶ 6. The other appeal is addressed and resolved by this order. *See infra* Discussion § I.

**Attorneys' Fees and Costs and Administrative Costs.** This order also addresses allocation of a portion of the settlement proceeds to pay the administrative costs of the settlement and for attorneys' fees and costs. These issues are addressed, in part, by earlier filed motions and a stipulation. Dkt. Nos. 68, 69, 72, 83. In addition, the Claims Administrator, Settlement Administrator, Class Counsel, and Counsel for Bio-Medical have submitted final bills, including for anticipated future fees and expenses. Dkt. Nos. 99, 100, 102.

**Claims and Disbursements Hearing.** On September 5, 2012, the court held a Claims and Disbursements Hearing. At this hearing, the court considered:

1.     Applications by the Settlement Administrator and Claims Administrator for payment of administrative costs related to the handling of notices, claims, and other administrative matters;

2.     Applications for attorneys' fees and costs by Class Counsel and counsel for Intervenor Bio-Medical Applications of South Carolina, Inc. ("Intervenor" or "Bio-Medical");

3.     Application for an incentive award to the Named Plaintiff;

4.     The single unresolved appeal of a claim denial; and

5.     Whether to approve final disbursement of funds.

**DISCUSSION**

Based on the written submissions and hearing, the court makes the following findings of fact and reaches the following conclusions of law regarding final distribution of funds.

3

## I.    CLAIMS

Nineteen (19) Participants and eighteen (18) Healthcare Providers submitted 319 claims totaling $735,931.55.  Dkt. No. 102-1 ¶ 2.  The Claims Administrator determined that $628,782.62 of the total sought met the definition of Payable Prior Unpaid Claims and could, therefore, be paid under the terms of the approved settlement.  *Id.* ¶ 3.  The Claims Administrator determined that the remaining $117,759.93 in claims did not fit the definition of Payable Prior Unpaid Claims.  *Id.*  The non-payable claims included a single claim for $56,281.65 which was denied because it was submitted twice.  *Id.*  This left $61,478.28 in non-duplicative claims which the Claims Administrator determined not to be Payable Prior Unpaid Claims.  *Id.*

Two Participants (and no Healthcare Providers) submitted appeals of the Claims Administrator's determinations.  *Id.* ¶ 5.  One appeal was of the denial of a claim for $55.00.  After reviewing the appeal documentation, the Claims Administrator reversed its initial denial of this claim, thus mooting the appeal.  *Id.*  The second appeal was for denial of a claim for $19,000.  *Id.* ¶ 6.  This claim, and the appeal, were submitted by a Participant who indicated the amount was owed to her Healthcare Provider.  The denial was based on a lack of documentation.

After receipt of the denial, the Participant provided the underlying bill, thus resolving the original basis for denial (lack of documentation).  *Id.*  After reviewing the bill, the Claims Administrator concluded that this claim was not eligible for payment under the Class Settlement because it was either previously (1) "paid as part of a settlement or other negotiated payment intended by the Plan and the HealthCare Provider to be a final payment on the claim" or (2) "paid by the Plan under the terms of the Plan or any applicable contract with the HealthCare Provider," or both.  *Id.*; *see also* Settlement Agreement ¶ 1.30.1, Dkt. 73-1.

4

This determination was consistent with the bill submitted by the Participant which indicates that the balance was satisfied by an adjustment or credit in May 2010. Dkt. No. 104 at 11 (filed under seal).[4] Evidence offered both prior to and at the hearing confirms that the Healthcare Provider settled this claim with the Plan under terms which preclude it from seeking any deficiency through this action or from the Participant. *See* Dkt. No. 102-1 para. 6; Dkt. No. 109 (sealed exhibit).[5] Based on this undisputed evidence, the court denies this appeal.

Based on the mooting of one appeal and denial of the only other appeal, addressed above, the court upholds the Claims Administrator's determinations. Accordingly, the court finds the total amount of Payable Prior Unpaid Claims is $628,837.62. Settlement Funds remaining after payment of approved fees, costs and incentive award (addressed below), shall be used to pay these claims on a *pro rata* basis. *See infra* Discussion § V.

## II.    ADMINISTRATIVE COSTS

The Settlement Administrator's fees and costs for services provided under the Settlement Agreement to date are $22,097.00 and $3,830.02, respectively. The Settlement Administrator estimates that future fees and costs of administering the settlement will total $6,000. Thus, the fees and costs sought by the Settlement Administrator total $31,927.00

The Claims Administrator's fee for services provided under the Settlement Agreement is $15,000. The Claims Administrator will not seek any additional reimbursement.

---

[4] The bill at issue has been filed under seal because it reveals confidential medical information. A summary of the non-confidential aspects is included here. The bill reflects services provided in June 2007, for which the provider originally billed $19,743. An entry in May 2010 reflects an adjustment of "-19743.00" and includes the following description: "Receipts, Adjustments, Etc. *** Conversion Adjustment; AEVOHEA[.]" The same page reflects a total credit equal to the total bill (each $19,743) and states that the "Total Due" is "0.00."

[5] Dkt. No. 109 was filed under seal because it refers to the terms of a confidential settlement.

5

These costs and fees are within the range previously estimated and are properly supported. *See* Dkt. No. 70-9 at 7 (full notice disclosing estimated range between $40,000 and $60,000 for administrative fees and costs). The court finds these costs and fees to be reasonable and approves distribution of these amounts from the Settlement Fund.

## III.    ATTORNEYS' FEES AND COSTS

There are two separate requests for attorneys' fees and costs. Class Counsel, Pierce, Herns, Sloan & Wilson, LLC, seeks fees and costs under an initial motion and supplemental request, Dkt. Nos. 69, 99. In addition, counsel for Intervenor Bio-Medical has filed a motion for fees and costs as recently supplemented. Dkt. Nos. 68, 100.[6]

**Stipulated cap on fees and costs.** All parties and their counsel have entered a joint stipulation through which they agree as follows: (1) Class Counsel will not seek more than Two Hundred and Seventy Thousand Dollars ($270.000) in fees and costs;[7] (2) Intervenor Bio-Medical will not seek more than Sixty Thousand Dollars ($60,000) in fees and costs; and (3) no party will oppose an award of fees and costs up to these amounts. Dkt. No. 72. Moving counsel have limited their requests to these figures which, together, represent thirty-three percent (33%) of the total recovery obtained through the Class Settlement. While the stipulation is binding in limiting any award of fees and costs, it does not establish that an award is warranted. The court, therefore, considers the propriety of the requests for fees and costs independently of the stipulation.

**Absence of objections.** In reviewing the requests for attorneys' fees and costs, the court has considered the absence of any objection to payment of fees and costs up to the specified caps. While

---

[6] Both Class Counsel and Intervenor filed earlier motions for fees and costs. *See* Dkt. Nos. 44, 50, 51. The earlier motions were, however, superceded by the later-filed motions.

[7] The Settlement Agreement refers to a somewhat higher cap on Class Counsel's fees and expenses ($300,000). The court finds Class Counsel is limited to the lower amount set out in the stipulation.

6

not dispositive, it is significant that no objections were submitted to the anticipated requests which were disclosed in the class notices. *See* Dkt. No. 70-9 at 7 (full notice disclosing anticipated requests for fees up to the stipulated caps). This is particularly true given that, at the time objections were due, it was anticipated that claims would be paid at a much lower percentage than is now likely. *See, e.g.,* Dkt. No. 70-9 at 6 (full notice providing examples of *pro rata* distributions in the 50-60% range); *infra* Discussion § V (estimating *pro rata* payments of just under 99% of approved claims)

### A.    STANDARD

The court's review of Class Counsel's fee request is governed primarily by Rule 23(h) of the Federal Rules of Civil Procedure. Under Rule 23(h), which governs fee awards in class actions, the court may "award reasonable attorney's fees and nontaxable costs that are authorized by law or the parties' agreement." The rule also sets out procedures for making such awards. These procedures require application by motion with reasonable notice to class members and an opportunity for those class members to object. Fed. R. Civ. P. 23(h)(1), (2). They also require that the court place its findings of fact and legal conclusions on the record. Fed. R. Civ. P. 23(h)(3). Proper notice was given here as the class notice advised members of the Settlement Classes of the maximum fees counsel might seek and provided them an opportunity to file an objection. Despite this notice, no objections were filed.

Because this action was pursued under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"), the court also considers whether and in what amount fees might have been awarded under that statute. Under ERISA, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g). *See also Williams v. Metropolitan Life Ins. Co.*, 609 F.3d 622, 634 (4th Cir. 2010) (addressing five factors

considered in exercising discretion whether to award fees).  If the court determines fees should be shifted, it then determines the amount of the award using the familiar standard summarized in *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n. 28 (4th Cir. 1978).[8]  While ERISA's fee-shifting provision provides some guidance, it is not determinative here because the fees and expenses are being awarded from a common fund, not against the opposing party.

In this case, the sole source of payment of damages, fees and costs is an ERISA fiduciary liability insurance policy ("Fiduciary Policy"), the full value of which will be paid into a Settlement Fund under the terms of the Class Settlement.  Thus, any payment of fees and costs will necessarily reduce the funds available to the Plaintiff Classes.  Further, the Settlement Agreement contemplates any fees and costs will be paid from the fund created by payment under the Fiduciary Policy.  Under these circumstances, the fees sought are more appropriately reviewed as a "common fund" fee request.  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (noting Court had "recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."); *Eaves v. Penn*, 587 F.2d 453, 464 (10th Cir. 1978) (acknowledging that common fund theory may be applied in an action under ERISA that results in recovery by the Plan, but remanding for a determination of whether fees should be shifted under Section 1132(g)).

---

[8] The *Barber* factors are:  (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.  *Barber*, 577 F.2d at 226 n. 28.

In the context of a "common fund" created by a settlement which precludes fee shifting, courts generally analyze the reasonableness of the requested fees first as a percentage of recovery. *See* 4 Newberg on Class Actions § 14:6 (4th ed. supp. 2012) (noting a "normal range" from 20 to 33 percent, with 50% serving as a rarely-crossed upper limit and one-third being the average award regardless of whether calculated under a percentage or lodestar method). When courts award fees under a common fund percentage method, they may conduct a lodestar analysis as a cross check on the reasonableness of the fees. *Id.* § 14:7. "If the percentage of the award is higher than the lodestar, it is said to embody a 'multiplier' and the size of the multiplier can help a court determine the reasonableness of the percentage fee." *Id.* (noting that "multipliers from 1-3 are the norm"). This court follows the cross-check approach.

### B.    COMMON FUND PERCENTAGE

The fees and expenses sought by Class Counsel and Intervenor collectively equal 33% of the total recovery. This is slightly less than the the fee percentage (33.33%) to which the Named Plaintiff (class representative) agreed in retaining Class Counsel to represent her interests and those of the originally defined putative class. *See* Dkt. No. 106. Because costs are included in the sums sought by Class Counsel and Intervernor Bio-Medical, the total fee and cost award is actually more favorable to the Settlement Classes than the contingency fee agreement agreed to by the Named Plaintiff which provided for payment of an attorneys' fee of 33.33% in addition to costs. *Id.*

A 33% contingency fee is within the range of reasonableness. Indeed, in recent years the court has seen contingency fee agreements in which plaintiffs agree to pay up to 40% in fees in addition to payment of costs regardless of whether the matter is resolved by settlement or trial. The reasonableness of this percentage is also supported by affidavits filed by Class Counsel. Dkt. No. 69-3, 69-4, 69-5.

The court has also considered the effect payment of the requested fees and costs will have on payment of claims. Allowing all fees and costs requested (equal to the cap set in the stipulation) will leave sufficient funds to pay claims at just under 99% of face value. *Infra* Discussion § V. Thus, payment of the stiplated fees will also allow almost full relief to Claimants.

The above factors suggest that approving payment of attorneys' fees and costs in the stipulated amount is reasonable under a common fund percentage theory. This conclusion is further supported by the lodestar analysis below.

### C.    LODESTAR ANALYSIS

In addition to considering whether the fees sought are reasonable as a percentage of overall recovery, the court considers whether the amounts sought are reasonable under a lodestar analysis. *See supra* Newberg § 14:7; Robinson *v. Equifax Information Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009) (addressing attorneys' fees award under a fee-shifting statute and noting that "court must first determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate."). In determining what constitutes a "reasonable" number of hours and billing rates, this court applies the factors adopted in *Barber*. *Id*. at 243-44 (reaffirming use of the *Barber* factors). Proper consideration of these factors requires the court to analyze Class Counsel's and Intervernor's fee requests independently.

### 1.    CLASS COUNSEL'S REQUEST FOR FEES AND COSTS

Class Counsel seeks an award of Two Hundred and Seventy Thousand Dollars and No Cents ($270.000.00) in combined fees and costs. As explained below, this (1) is the amount set by a stipulated cap on fees and costs, (2) slightly exceeds the fees and costs supported by a straight

10

lodestar calculation (with fees and costs through August 20, 2012), and (3) represents less than a 10% enhancement over the lodestar calculation.[9]

**Supporting documentation.** Class Counsel's initial request for attorneys' fees and costs was made on January 20, 2012, Dkt. No. 69, and supplemented on August 29, 2012, Dkt. No. 99, with a record of the hours and costs incurred since the original filing. Class Counsel's initial filing included an itemized bill indicating that, as of January 6, 2012, Class Counsel had incurred attorney and paralegal fees of $212,015.00. Dkt. No. 69-2. This calculation was based on an hourly rate of $250 for partners, $150 for associates, and $50 for paralegals and a total of more than 1,025 hours for attorneys and paralegals. Class Counsel estimated that it would incur an additional $50,000 in fees to conclude the settlement, suggesting that the final lodestar fee calculation would total $262,015. In addition, Class Counsel's itemized statement indicated that it had incurred $8,025.08 in costs as of January 6, 2012. Dkt. No. 69-2.

Class Counsel supplemented its request for fees and costs with an updated bill on August 29, 2012, showing fees and costs incurred from January 7, 2012 to August 20, 2012. Dkt. No. 99-1. This itemized bill reflected an additional $27,815.00 in attorney and paralegal fees for a total of $239,830.00. The itemized bill also indicated that Class Counsel has incurred an additional $321.02[10] in costs for a total of $8,346.10 in costs. Thus, documented fees and costs totaled $248,176.10 as of August 20, 2012. This amount is roughly $22,000 below the stipulated cap on fees and costs.

---

[9]  Although Class Counsel argues that a 20% enhancement (1.2 multiplier) is justified, they do not seek to recover any more than the agreed cap.

[10]  The bill includes an additional $12,500.00 payment to the Settlement Administrator that will be refunded by the Settlement Administrator upon approval of payment to her. It is not, therefore, considered here.

11

**Support for hourly rate.** In support of its fee request, Class Counsel submitted affidavits from three South Carolina attorneys, each from a different firm and each with relevant experience. Dkt. Nos. 69-3, 69-4, 69-5. Each affiant addresses the experience and skill of Class Counsel and opines that Class Counsel's requested hourly rates and resulting request for fees were reasonable given the work required.

**Work done and results achieved.** As reflected in its itemized time sheets, Class Counsel located the $1,000,000 Fiduciary Policy to cover the losses of the Named Plaintiff and others similarly situated, and engaged in lengthy negotiations that eventually resulted in Defendants offering the limits of the Fiduciary Policy. Class Counsel then prepared, filed, and served the Complaint in this matter. This entailed substantial research into both substantive law (ERISA), class action procedures generally, and specific issues regarding how to allow the originally identified ERISA class to benefit from the Fiduciary Policy.

Class Counsel negotiated a detailed Settlement Agreement with counsel for Defendants and also prepared and served two motions for Class Settlement. The second motion and a related amended complaint were required due to complexities of the settlement which required creation of a second Settlement Class. Class Counsel also engaged in negotiations with counsel for Intervenor Bio-Medical and, along with counsel for Defendants and Bio-Medical, prepared the extensive class notice and claim documents and oversaw the class notice and claims procedures. Class Counsel's efforts in this matter are set out in more detail in the Memorandum in Support of Plaintiff's Motion for Attorney's Fees and Costs, Dkt. No. 69-1, and itemized bill. Dkt. No. 69-2.

12

**Barber Factors Applied.**

**Reasonableness of rate.[11]**  As explained in *Robinson v. Equifax Information Servs., LLC,* 560 F.3d 235 (4th Cir. 2009), determining the proper hourly rate is generally the most critical inquiry in setting a lodestar fee. *Id.* at 244.  The fee applicant bears the burden of establishing the proper rate which requires support beyond counsel's own affidavit. *Id.* (holding "fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award").  The relevant support should normally include "affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community[.]" *Robinson,* 560 F.3d at 245.[12]

Class Counsel seeks an hourly rate of $250 per hour for partners working on the matter.  This request is supported by affidavits from three independent attorneys.  The court finds the partner rate reasonable based on this evidence and its own knowledge of fees charged for similar work in this district.   The court finds the substantially lower associate rate reasonable for the same reasons.

**Time and labor expended and novelty and difficulty of the issues raised.**  Class Counsel has submitted itemized contemporaneous bills that show 1,140 hours in attorney and paralegal time in negotiating, obtaining approval of, and bringing this class action to final resolution. The time and labor expended by Class Counsel was, in part, driven by the novelty and difficulty of the issues raised.  This matter has been both factually and legally complex, requiring a substantial investment

---

[11]  "Reasonableness of the rate" is not a *Barber* factor.  Instead, it is a determination made by applying those *Barber* factors which are relevant to determining a proper rate.  At least for purposes of this case, the factors relevant are the third, fifth and ninth *Barber* factors which consider the skills necessary to perform the services, the customary fee for like work, and the experience, reputation, and ability of the attorney.

[12]  In *Robinson*, the court held that the Laffey Matrix, which addresses rates in the District of Columbia, was insufficient to support the reasonableness of rates charged in litigation in the Eastern District of Virginia.

13

of time to bring to a final and favorable resolution.  Thus, both of these factors weigh in favor of finding the number of hours claimed by Class Counsel reasonable.

**Amount in controversy and results obtained.**  As noted above, Class Counsel, together with Intervenor, have obtained a settlement which will pay $1 million into a Settlement Fund.  That fund is sufficient to pay all claims at just under 99% of the amount sought even if fees and costs are allowed in the stipulated amounts.  This is clearly substantial relief to the Classes, including both Participants and their Health Care Providers.  It, therefore, supports an award of the full lodestar amount (rate sought times hours claimed).

**Counsel's expectations at the outset of litigation.**  Initially, Class Counsel took this matter on a contingency basis.  Class Counsel and the proposed Named Plaintiff agreed to a contingency fee of thirty-three percent (33.33%) of any award (in addition to payment of costs).  The amount which Class Counsel now seeks, when combined with the award sought on behalf of Intervenor, is slightly less than that percentage, particularly as costs are included.

At the time Class Counsel agreed to represent Ms. Robinson, Class Counsel was not aware of any coverage or other assets available to satisfy the class claims.  Class Counsel was, however, aware that any payment on behalf of a class would be subject to judicial review and also that there was a potential for recovery of attorneys' fees under ERISA, which would normally be limited to the lodestar rate.  Balanced, these considerations support an award of no less than the lodestar amount and, possibly, some multiplier (not to exceed the stipulated cap on fees) for the contingent nature of the award.

**Undesirability.**  The presence of a potentially large class action judgment arguably made the case more desirable within the legal community.  On the other hand, the risk of a lack of funds

to pay any recovery and the complexities of the matter lessened the desirability.[13]   Indeed, those complexities grew after the matter was initiated.   Under all the circumstances, the court concludes that the matter was not one many law firms in the state were likely to be willing and able to undertake.   Accordingly, the riskiness of this matter and its undesirable characteristics support an award of full fees.

**Other factors.**   The court does not find the remaining *Barber* Factors to weigh either for or against an award of the fees sought.

**Costs and expenses.**   Class Counsel has properly supported the claim for costs in the amount of $8,025.08.   The court finds these costs, which are unchallenged and included within the collective award sought, to be reasonable.

**Multiplier.**   Multipliers are rarely permissible when fees are awarded under a fee-shifting statute.   *See, e.g., Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565  66 (1986).   The court's consideration of the lodestar formula here is, however, being used as a cross-check on the reasonableness of a percentage fee award.   Under these circumstances, the court may properly consider a multiplier.   Newberg § 14:7 (stating that "multipliers from 1-3 are the norm").

Here, Class Counsel ostensibly seek a multiplier of 1.2.   The total fees and costs is, however, limited by the stipulated cap which results in an effective multiplier of roughly 1.09.   This is a minimal multiplier which the court finds reasonable in light of the contingent nature of the action, the absence of any objections, and the resulting payment of nearly 99% of claims.

---

[13]   Until Class Counsel located the Fiduciary Policy, there was very little prospect of recovery or payment of fees.

15

The court, therefore, approves Class Counsel's request for an award of $270,000 in fees and costs to be paid from the Settlement Fund.

## 2.     INTERVENOR'S REQUEST FOR FEES AND COSTS

Intervenor Bio-Medical is a plaintiff-in-intervention in this action. It intervened after engaging in lengthy negotiations with one or more Defendants regarding its own claims for unpaid medical benefits, and the subsequent filing of its own private action to recover such benefits. *See* Civil Action No. 3:11-cv-00499-CMC ("the Bio-Medical Action"). After intervention, Bio-Medical's counsel contributed significantly to resolution of this action. The resulting benefits were equally favorable to Intervenor's own interests and to other members of the two Settlement Classes.[14]

Intervenor has requested fees of Sixty Thousand Dollars ($60.000). Intervernor's request for attorneys' fees and costs was made on January 20, 2012, Dkt. No. 68, and supplemented on August 29, 2012, with a record of fees incurred through July 31, 2012. Dkt. No. 100. No objection has been made to Intervernor's request.

Where the claimant making an application for fees from a common fund is not the representative plaintiff but an intervenor or objector, the core consideration as to "whether an award is justified is the value to the class of the legal work performed for its benefit" by the intervenor or objector's counsel. *See, e.g., County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1326 (2d

---

[14]  Bio-Medical intervened on April 26, 2011. At a status conference on May 12, 2011, Bio-Medical indicated that it did not intend to seek fees in this action. However, in the year following that hearing, Bio-Medical's counsel became heavily involved in advancing fact discovery, in negotiations related to the Settlement, in structuring a workable settlement claims process, in drafting and revising settlement materials and attendant forms and notices, and in attending conferences and hearings before the court. Because it had not expected its role as intervenor to become so expansive, Bio-Medical filed a motion to recoup a portion of its fees from the Settlement Fund, namely, those fees it believed it had incurred for the benefit of all members of the Classes as opposed to for its own benefit. *See* Dkt. No. 68-1 at 10-11.

Cir. 1990) (affirming award of counsel fees to intervenors). Accordingly, where an intervening party's attorneys have "substantially benefitted the class," fees may be appropriately awarded. *Id.*; *see also Kargman v. Sullivan*, 589 F.2d 63, 68-69 (1st Cir. 1978) (awarding fees to intervenor-defendants' counsel "where there [was] a substantial court-controlled fund that [would] soon be returned to certain tenants largely . . . . because of [intervenor's] efforts").

**Intervernor's supporting documentation.** Intervernor's motion presented itemized charges showing that, as of December 31, 2011, Bio-Medical had incurred attorneys' fees of $101,618.50. Dkt. No. 68-4. Intervenor represents that these fees were incurred only for time spent on tasks and issues that inured to the benefit of the Settlement Classes as a whole, and include no fees for work that benefited only Bio-Medical, nor for any conferences between Bio-Medical and its counsel, nor for any work performed by its local counsel. Dkt. No. 68-1 at 10-11. The time entries documented in Bio-Medical's Exhibit B support these assertions and no contrary evidence or argument has been presented.

Bio-Medical also supplemented its request for fees on August 29, 2012, documenting those fees it incurred from January 1, 2012 to July 31, 2012. Dkt. No. 100. The Supplement shows an additional $18,792.00 in attorneys' fees incurred in 2012, for a total of $120,410.50.

The fees incurred were for time billed at hourly rates ranging from $290 to $470.[15] Intervenor's support for the reasonableness of these rates consists of a declaration of lead counsel Caroline English, Dkt. No. 68-3, case law which is primarily from other jurisdictions, and a matrix addressing rates charged in another jurisdiction. This documentation is insufficient to support the

---

[15] For time billed in 2011, Bio-Medical's counsel, Arent Fox LLP, charged $470 per hour for partner Caroline English, $320 per hour for associate Brian Schneider, and $290 per hour for associate Jason Moore. *Id.* at 11. For time billed in 2012, Bio-Medical's counsel, Arent Fox LLP, charged $490 per hour for partner Caroline English, and $325 per hour for associate Jason Moore. Dkt. No. 100-3.

17

rates sought because it does not include support for the reasonableness of the rates within this district.

This deficiency is not, however, fatal to Intervenor's request because it has limited its final request for fees and costs to $60,000. This reduces the fees sought for work which benefitted the Settlement Classes as a whole by over one half, which has the same effect as cutting counsel's rates in half. This brings the rates sought for work by Intervenor's counsel in line with the rates approved for Class Counsel. In light of this reduction and the court's own observations of the contributions of Intervenor's counsel, the court finds the reduced fees fully justified.[16]

## IV.    INCENTIVE AWARD

Plaintiffs have also requested an incentive award of $2,000 for Named Plaintiff Veronica Robinson.

> Incentive awards are routinely approved in class actions to encourage socially beneficial litigation by compensating named plaintiffs for their expenses on travel and other incidental costs, as well as their personal time spent advancing the litigation on behalf of the class and for any personal risk they undertook.

*Kay Co. v. Equitable Prod. Co.*, 749 F. Supp. 2d 455, 472 (S.D. W. Va. 2010) (citations and quotations omitted). "Serving as a class representative is a burdensome task and it is true that without class representatives, the entire class would receive nothing." *Id.*

The court finds that this request is reasonable and approves payment of an incentive fee of $2,000 to Named Plaintiff.

---

[16] It was through the participation of Intervenor's counsel that the parties determined that the full $1 million limit of the Fiduciary Policy should be available to the settlement fund, rather than $1 million less defense costs. This is a significant difference and, consequently, a significant contribution to the results obtained. Intervenor's counsel also contributed significantly to structuring the settlement and obtaining a bar order that would allow for consummation of the settlement.

18

## V.    FUNDS AVAILABLE TO PAY CLAIMS

For reasons set out above, the court approves payment of fees and costs to the Settlement Administrator, Claims Administrator, Class Counsel, Intervenor's Counsel, and an incentive payment to the Named Plaintiff which, together, total $378,927. Subtracting this amount from the net settlement of $1,000,000 leaves $621,073 to pay claims. The total Payable Prior Unpaid Claims is $628,837.62. Thus, based on a *pro rata* recovery, each Claimant will receive 98.77% of their respective claim amounts.

## VI.    DISBURSEMENT OF FUNDS

Within three business days of entry of this order, Defendants' counsel shall file confirmation that the individual who appealed a claim denial has been provided a copy of this order together with a cover letter directing her attention to the portion of the order denying her claim. No later than September 19, 2012, Defendants' counsel shall file a compilation prepared by the Claims Administrator, reflecting the total approved claims. A redacted version of that compilation (removing claimant names) shall be filed in the public record. An unredacted version (including claimant names) shall be filed under seal.

Absent any appeal of this order, Defendants will fund the Class Settlement on October 27, 2012. On November 10, 2012, the Settlement Administrator will disburse those funds as follows:

a.    $31,927 to the Settlement Administrator, the Klok Law Firm.

b.    $15,000 to the Claims Administrator, Planned Administrators, Inc.

c.    $270,000 to Class Counsel, Pierce, Herns, Sloan & Wilson, LLC.

b.    $60,000 to Counsel for Bio-Medical, Arent Fox, LLP.

d.    $2,000 to Named Plaintiff Veronica Robinson.

e.    $621,073 to those Claimants whose claims were approved.

Confirmation that these distributions have been made shall be filed within seven days following completion of the mailings.

The payees, including the approved Claimants, shall be allowed until February 8, 2013, to negotiate the checks sent to them.  If there are any unclaimed funds remaining, the Settlement Administrator will disburse those funds on a *pro rata* basis to the five Claimants with the highest aggregate amount of Payable Prior Claims up to the amount of their full claim.  If there are any unclaimed funds remaining after those Claimants have been paid, the remaining funds will be disbursed to the Plan and commingled with Plan funds.

IT IS SO ORDERED.

s/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
September 10, 2012

20